JAMES S. THOMSON
California SBN 79658
Attorney and Counselor at Law
732 Addison Street, Suite A
Berkeley, California 94710
Telephone: (510) 525-9123
Facsimile:  (510) 525-9124
Email: james@ycbtal.net

Attorney for Defendant
DESHAWNTE GAMBOA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> DESHAWNTE GAMBOA, ) <br> ) <br> Defendants. ) <br> ) <br> _____ ) | **Case No. 19-cr-00226-RS-4** <br><br> **DESHAWNTE GAMBOA'S SENTENCING MEMORANDUM** <br><br> **Judge: Honorable Richard Seeborg** <br> **Date: July 12, 2022** <br> **Time: 9:30 A.M.** |

Sentencing Memorandum

**TABLE OF CONTENTS**

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II. SOCIAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A. Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B. Mental and Emotional Health. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    C. Adverse Childhood Experiences Assessment. . . . . . . . . . . . . . . . . . . . . . . . 4
III. CHARGES AND PLEA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
IV. ACCEPTANCE OF RESPONSIBILITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
V. GUIDELINE CALCULATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
VI. SUBSTANCE ABUSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
VII. EDUCATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
VIII. EMPLOYMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
IX. REQUEST FOR SENTENCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
X. FUTURE PLANS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
XI. CONCLUSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## I.   INTRODUCTION

Deshawnte Gamboa pled guilty early on in the case. Doc #151. He entered pretrial diversion upon entering his plea. Doc #152. He admitted responsibility for what he had done.

According to the terms of the Diversion Agreement, "if the Government determines that Mr. Gamboa has "complied with this agreement," it "shall abide by the promises set forth in the Plea Agreement." In turn, according to the Plea Agreement, the government will ask "the Court for leave to dismiss Count One of the Superseding Information" and agree that Mr. Gamboa "may move to have his guilty plea as to Count One set aside." Doc #151 and #152. Mr. Gamboa "would then proceed to sentencing as to Count Two only and the government would recommend a sentence of probation." Id.

In this regard, the government has determined that Mr. Gamboa successfully completed the diversion period and recommends that the Court permit him to withdraw his plea of guilty to Count One and sentence him to a five-year term of probation. AUSA Sentencing Memorandum at 1, Doc #343.

Admittedly, completing the diversion program was hard for Mr. Gamboa. From his early years of trauma marked by being abused by his foster father, then seeing friends and others being killed in the streets and through his early addiction to drugs, it took Mr. Gamboa some time to acclimate and respond to the programs and treatment he was being provided through diversion. But, he never gave up. Each time he stumbled, he got back up and moved forward.

After having his initial diversion period run (January 2020 through June/July 2021) and an extended period run for another 6 months (August 2021 through January 2022), Mr. Gamboa was formerly determined to have completed diversion on February 14, 2022.[1]  Doc #322.

---

[1] Mr. Gamboa was to be sentenced on May 24, 2022 originally, but that sentencing date was continued to July 12, 2022 due to the Court's calendar.

Sentencing Memorandum

1

1    During his time on diversion, Mr. Gamboa missed three counseling sessions – one
2 in November 2020 and two in March 2021.  But from January 2020 through October
3 2020, and December 2020 through March 2021, and since March 2021, he attended every
4 session.  While he missed three sessions over thirty (30) months, he attended far, far more
5 sessions than he missed.
6    During his time on diversion, Mr. Gamboa tested positive for drugs on five
7 occasions.  The last time occurred in January 2021.  Since then, he "has tested negative
8 for all drug tests submitted."  Presentence Investigation Report ("Report") at 6, para 5.
9    The fact that he relapsed and used drugs is not totally surprising given the level of
10 his addiction.  He was hooked on drugs at an early age and it continued up to his arrest.
11 He first used marijuana when he was 9 years old.  He smoked it weekly until he was in
12 the sixth grade, and then he used it daily until the date of his arrest.  He first used cocaine
13 at 14 years old and continued using it until his arrest.  He tried other drugs along the way.
14 He started using heroin at age 31 and used it daily until his arrest at age 38.
15    Counseling has contributed to his success with drug addiction.  It also has allowed
16 him to dig deep and explore the effect of his past trauma.  He had never been involved in
17 therapy before he entered diversion.  He acknowledged that he was only recently able to
18 "open up" about the abuse he suffered.  As a result, "he now understands the trauma those
19 events had on his life."  Report at 16, para 61.
20    Mr. Gamboa is not yet a new man, but he is on the path to become one.  A road he
21 had never traveled before the government took a chance on him.  And, while not perfect,
22 he has shown that he was worth that second chance.

23 **II.    SOCIAL HISTORY**
24    **A.    Background**
25    Mr. Gamboa (birth name: Santos Brown) was born on August 7, 1980, in San
26 Francisco, California, to Charlene Brown and an unknown father.  His mother has been a
27 drug addict all his life.  His father is suspected to have been an addict as well.
28    Mr. Gamboa was placed in foster care upon birth.  He was raised in foster homes.

Eventually, he was adopted by Betty Gamboa. His basic needs were met as he grew up. He was "thankful" to be with Ms. Gamboa who gave him some stability. Report at 15, para 61.

Prior to being adopted, Mr. Gamboa was abused by his foster father. He was often left alone with him. Mr. Gamboa just recently opened up about these events. He now understands the trauma those events had on his life. Report at 15-16, para 61.

In addition to the abuse he personally suffered, while living in the Hunter's Point District, Mr. Gamboa was traumatized due to the violence he endured. He experienced death time and time again. He knew at least ten people that were killed throughout his childhood, two of which were shot and killed "in front of him, and one friend who was also killed in front of him." Report at 16, para 62. Mr. Gamboa simply did not know how to cope with all the trauma he experienced. He acted out and got into a lot of trouble as a child. Id. He felt "a lot of anger due to all the traumatic events in his life." Id.

Mr. Gamboa indicated "he was never the same" after his adoptive mother's death. Report at 15, para 60. Mr. Gamboa's wife, Laya Limjoco, indicated "everything went 'downhill'" after his adoptive mother's death. She stated that Mr. Gamboa's drug use spiraled. Mrs. Limjoco observed that Mr. Gamboa "lacked a stable father figure." Report at 17, para 66.

Mr. Gamboa first met his wife, Laya Limjoco, when they were 18 years old. They got married approximately seven or eight years ago. They have two children together, Kai Gamboa, age 14, and Tayla Gamboa, age 11. The children reside with Ms. Limjoco. He has regular contact with his children.

### B. Mental and Emotional Health

Sadly, Mr. Gamboa was never seen by a therapist or counselor before the instant offense. As a result, he has never been diagnosed with any mental or emotional health issues. But, that does not mean he is not in need of help – help which he is now receiving.

Mr. Gamboa "thinks he may have undiagnosed post-traumatic stress disorder (PTSD) and he experiences anger issues." Report at 18, para 74. He "has been receiving mental health counseling services at Center Point in San Rafael." Id.  He now understands that "anger management, family therapy, and drug counseling will benefit him and his family.  He is willing to participate in any treatment that will further his growth." Id.

Mr. Gamboa successfully completed Center Point Center residential drug treatment from September through December of 2020.  "Center Point helped him realize some of the issues in his life due to trauma, which were also some of the reasons he relied on drugs.  He noted his anger issues were also a trigger for his drug use." Report at 18, para 78. Mr. Gamboa knows "that dealing with his anger issues is key for success at this time." Id.

### C.  Adverse Childhood Experiences Assessment

Probation administered the Adverse Childhood Experiences (ACEs) Assessment to Mr. Gamboa.  ACEs evaluates traumatic events involving abuse, neglect, and household dysfunction that occur prior to age 18.  Report at 18, para 76.

Mr. Gamboa scored nine (9) out of ten (10).  This is a remarkably high score.  It places Mr. Gamboa "at risk for major chronic health, mental health, economic health and social health issues."  Report at 18, para 76.

## III. CHARGES AND PLEA

On May 14, 2019, an Indictment was filed charging Mr. Gamboa with conspiracy to distribute and possess with intent to distribute controlled substances (Count 1) in violation of 21 U.S.C §§ 846 and 841(a)(1) and (b)(1)(B) and distribution of 100 grams and more of a mixture and substance containing a detectable amount of heroin (Count 9) in violation of 21 U.S.C §§ 841(a)(1) and (b)(1)(B)).  Doc #10.

On January 17, 2020, a Superseding Information was filed charging Mr. Gamboa with  distribution of 100 grams and more of a mixture and substance containing a detectable amount of heroin (Count 1) in violation of 21 U.S.C §§ 841(a)(1) and (b)(1)(B

1  and distribution of a mixture and substance containing a detectable amount of heroin
2  (Count 2) in violation of (21 U.S.C. §§ 841(a)(1) and (b)(l)(C).  Doc #147.  He is also
3  charged with aiding and abetting these crimes in violation of 18 U.S.C. § 2.  *Id.*
4  　　　　On January 21, 2020, Mr. Gamboa entered into a plea agreement for Pretrial
5  Diversion and pled guilty to Counts 1 and 2.  Doc #151 and 152.  Pursuant to the written
6  Plea Agreement, the parties agreed to an 18-month diversion program ending on July 21,
7  2021.  Id.
8  　　　　On August 16, 2021, the Court extended Mr. Gamboa's Pretrial Diversion to
9  February 15, 2022.  Doc #298.
10  　　　　On February 15, 2022, a status hearing was held.  Doc #322.  The Court
11  acknowledged that the Pretrial Diversion process had been completed and referred the
12  matter to Probation for the preparation of a presentence report.  Id.  The Court set
13  sentencing for May 24, 2022.  Id.
14  　　　　On April 27, 2022, the Court continued the sentencing hearing to July 12, 2022.
15  Doc #328.
16  **IV.    ACCEPTANCE OF RESPONSIBILITY**
17  　　　　Mr. Gamboa accepts responsibility for his actions in this case.  He offered
18  apologies, not excuses for his actions.
19  　　　　As Probation noted:
20  　　　　In summary, Gamboa agreed he is guilty of the August 13, 2018, drug
21  　　　　trafficking activity by going with his co-conspirator (McCoy) to a gas
　　　　station located at 1235 California Avenue in Pittsburg, California, to sell
　　　　a brick of heroin to a confidential source.  McCoy and Gamboa aided and
22  　　　　abetted one another and sold the brick of heroin to the confidential source
　　　　in exchange for $7,000. The defendant's role was to conduct counter-
23  　　　　surveillance by watching out for law enforcement and communicating any
　　　　potential law enforcement activity in the area where the transaction
24  　　　　occurred using a two-way radio. Gamboa was aware that McCoy sold 100
　　　　grams or more of heroin. The heroin tested was determined to be a mixture
25  　　　　and substance containing heroin with a net weight of 205.8 grams.
26  Report at 9, para 25.
27  　　　　Probation further noted that "Mr. Gamboa indicated he is regretful for committing
28  the offenses.  He stated the crime deeply affected his life.  His actions have caused him to

1  lose his ability to see his family on a daily basis and he deeply regrets the harm he caused
2  to his family." Report at 9, para 30.
3       Mr. Gamboa candidly acknowledged that "his actions have put his family through
4  turmoil.  He has not been physically present for his kids, or his wife and she has had to
5  take care of the kids both physically and financially on her own.  He stated that trying to
6  obtain fast money and his drug use were key influences as to why he committed the
7  offenses." Id.  Mr. Gamboa noted the instant offense put a huge burden on his wife to
8  physically and financially care for the children.  Report at 16, para 15.
9  **V.   GUIDELINE CALCULATION**
10      Mr. Gamboa's total criminal history score is one.  His criminal history category is
11 I.  Report at 10.  Importantly, Mr. Gamboa's criminal history is reflective of his lifelong
12 struggle with illegal substances, the death of his foster mom in 2002 and his tragic and
13 trauma laden upbringing.
14      The adjusted offense level is 19 with the appropriate reductions for Mr. Gamboa's
15 minor role in the offense and for acceptance of responsibility.  Report at 10.  Based on the
16 adjusted offense level and criminal history category, the guideline imprisonment range for
17 Count Two is 30 to 37 months.  Id. at 21, para 89.
18      As probation noted "as to Count One, the statutorily authorized minimum sentence
19 is greater than the maximum of the applicable guideline range; therefore, the guideline
20 term of imprisonment is 60 months. USSG §5G1.2(b).  Because the guideline range falls
21 into Zone D of the Sentencing Table, the minimum term must be satisfied by a sentence
22 of imprisonment.  USSG §5C1.1(f)." Report at 21.
23 **VI.  SUBSTANCE ABUSE**
24      Mr. Gamboa first tried marijuana at nine years old.  He smoked weekly until he
25 was in the sixth grade, then he started smoking on a daily basis until his arrest for the
26 instant offense.  He first tried cocaine at 14 years old, and he used occasionally until the
27 day of his arrest for the instant offense.  He tried hallucinogens, such as acid, mushrooms,
28 and Ecstasy at 18 years old.  He first tried heroin at age 31.  He used it daily until his

1 arrest for the instant offenses.

2     Mr. Gamboa's drug of choice was marijuana. He admitted that "heroin caused him
3 the most problems in his life." Report at 18, para 77. He "admitted having prioritized
4 drug use which led to him being absent for his family." Id.

5     Ms. Limjoco informed that Mr. Gamboa "has used 'everything' with regard to
6 illicit substances since 2004 (after his adoptive mother's death). She noted it progressed
7 and got worse ten years ago." Report at 18, para 79.

8 **VII.   EDUCATION**

9     Mr. Gamboa attended Linden High School while at a group home from 1996 to
10 1998. He did not complete his education. He did not receive his high school diploma.
11 He briefly attended City College of San Francisco in 2006, in an attempt to complete his
12 high school equivalency degree.

13 **VIII.   EMPLOYMENT**

14     In the past ten years, Mr. Gamboa worked sporadically at hotels, warehouses, and
15 security jobs. He was unemployed prior to his arrest for the instant offenses. He
16 admitted that he sold drugs to support himself prior to his arrest.

17     Mr. Gamboa is currently working full-time at a Five Keys resource center/shelter
18 home in San Francisco. He works hard. He is thankful for the opportunity to have
19 regular employment. He looks forward to producing for his family in the future.

20     Mr. Gamboa contributes approximately $400 to $500 per paycheck toward his
21 children's financial support.

22 **IX.   REQUEST FOR SENTENCE**

23     With Mr. Gamboa having successfully completed the diversion program, the
24 government has asked the Court to dismiss Count One of the Superseding Information
25 and allow Mr. Gamboa to withdraw his guilty plea to that Count. In turn, Mr. Gamboa
26 will proceed to sentencing on Count Two, which does not require a mandatory minimum
27 prison term. The government agrees that Mr. Gamboa satisfied the conditions of the
28

Diversion Agreement and recommends a sentence of five-years probation as to Count Two.

Probation noted that in setting a sentence, the Court may consider Mr. Gamboa's "longtime drug dependency; his traumatic childhood, including having been taken away from his biological mother due to her drug use; and living in different foster care homes, including having experienced [ ] abuse while at one of the homes." Report at 24, para 103. Indeed, the Court should consider these driving forces in assessing a sentence in this matter.

As noted, Mr. Gamboa suffers from undiagnosed mental health issues, most likely posttraumatic stress disorder (PTSD) due to childhood trauma. Naturally, he has experienced anger issues. Both matters are being addressed in his current mental health counseling. He is currently enrolled in anger management classes. Mr. Gamboa's ACEs score revealed an extraordinary high score, significant of traumatic events involving abuse, neglect, and household dysfunction during his childhood. Probation Sentencing Recommendation at 3.

Mr. Gamboa completed residential treatment at Center Point in 2020. While relapsing, he has shown great growth. According to Pretrial Services he is currently enrolled in substance abuse and mental health counseling services at Center Point and is doing well. And, as noted, Mr. Gamboa successfully completed his Pretrial Diversion term on February 14, 2022. Doc #322.

Ms. Limjoco believes Mr. Gamboa "can be a functioning and successful citizen if he is given the proper tools." Report at 17, para 70. She "believes the defendant will benefit from continued drug testing, employment resources, and counseling services." Id.

While Mr. Gamboa may not have been held accountable for the entire conduct described during the course of the law enforcement's investigation, he nevertheless played a minor participant role. Probation commented that Mr. "Gamboa's role in the conspiracy activity compared to his co-conspirator was a minor participant in the criminal activity." Report at 9. The government noted that Mr. Gamboa "was a minor participant

in the August 13, 2019 transaction and in McCoy's business generally" . . . and that his "participation in McCoy's business appears to have been substantially motivated by [his] drug addiction." Doc #343.

The trauma Mr. Gamboa suffered during his childhood and his significant substance abuse and undiagnosed mental health conditions, all point to a sentence of time served and a term of probation for a period of three years. This sentence will protect the community from further crimes by Mr. Gamboa. It will emphasize the seriousness of the offense, reflect respect for the law, provide just punishment and protect the community. And, it will also deter Mr. Gamboa from engaging in any future criminal conduct and serve as a general deterrence.

## X. FUTURE PLANS

Mr. Gamboa's future plans include maintaining his sobriety, becoming a fully productive member of society, and to be there for his family. As he expressed to Probation, he is striving "to take things one step at a time, so he does not overwhelm himself." Report at 17, para 69. While it may be a long hard battle, it is one that Mr. Gamboa can win in the end.

## XI. CONCLUSION

Based on the foregoing reasons, Mr. Gamboa requests to be sentenced to time served and a term of probation for a period of three years.

DATED: July 6, 2022                                     Respectfully submitted,

                                                        /s/ James Thomson
                                                        _____
                                                        JAMES THOMSON
                                                        Attorney for Deshawnte Gamboa

Sentencing Memorandum

9